Aron Steuer, J.
The steps leading up to this application had their beginning in an ex parte order obtained by the Attorney-General to examine respondent pursuant to article 10-A of the Social Welfare Law. Respondent moved to vacate the order on the ground that it was not an organization of the kind contemplated in the statute'. Special Term denied the motion but upon appeal the matter was remitted for the purpose of a hearing “to determine whether there is reason to believe ” respondent “is, or purports to be, or has been or purported to be a charitable organization within the meaning of article 10-A of the Social Welfare Law.” (Matter of Green v. Javits, 1 A D 2d 342.) Accordingly that issue was referred to the late Honorable Denis 0 ’Leary Cohalan to hear and report thereon. The testimony was completed but the unfortunate death of the learned Referee intervened before a report could *313 be rendered. The parties thereupon stipulated that the Special Term could make the determination upon the record of the testimony and the exhibits.
At the outset the record is conclusive that respondent is engaged in the same type of activity and has conducted its affairs in the same way from the date of its organization up to the present time. So that there is no distinction between the past and the present and the effective date of the statute saw no change. It is true that at an annual meeting resolutions are adopted which are considered as statements of policy. These resolutions deal with particular situations and instances which respondent deems call for correction or action. These, of course, differ from year to year and indicate immediate objectives but throughout the purpose and general method of procedure has remained the same.
Respondent states that its purposes are fourfold — first to defend itself. By this is meant that respondent has been under attack as a subversive organization and some of its energies are necessarily devoted to resisting that attack. This is really not a purpose, though it doubtless consumes time of its executives. Its second purpose is declared to be informational — it publishes various periodicals which call attention to the immigration laws, to various situations arising in connection with deportation and denaturalization proceedings and a service for lawyers interested in such proceedings calling attention to recent decisions in this field. It also provides for lectures on this subject. Its third field is described as legislative which is agitating for repeal of laws on these subjects to which it objects. Lastly, what it describes as concern with the administration and application of existing laws. This consists of supplying counsel to people threatened with proceedings of this nature if they ask for counsel; assisting’ their counsel if they are attorneys not supplied by the respondent and will accept such assistance; and, seeking moral support for the respondents in these proceedings through publicity. Of 350 deportation cases in which respondent interested itself it supplied counsel in 47. It also maintains a bureau where people in the difficulties referred to can seek advice. The aid described is given to all who apply but the overwhelming majority of those who do apply are people whose stay here is endangered because of communist affiliations. The respondent does seek to be selective in the sense that it gives the greatest attention and aid to proceedings which it believes to be test cases.
The question is whether such an organization is charitable within the definition of the Social Welfare Law. The definition *314 given by the statute (§ 481): “ Any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such.” It excludes (§ 482-a) religious organizations and institutions operated by or in connection with religious organizations, educational institutions, fraternal, patriotic, social and alumni organizations which do not solicit outside their membership, and certain others of no application here.
In its general sense charity is any act done without expectation of profit which alleviates the condition of the handicapped or unfortunate, or tends to forward the progress of mankind. This definition or one of similar import is occasionally found in judicial decisions. (See collection of authorities in Jackson v. Phillips, 14 Allen (96 Mass.) 539, 556 et seq.) But it is comparatively rare. That is because the court is concerned with the precise meaning intended by a particular statute, will or other instrument. In this connection the definition given by the courts in interpreting the internal revenue laws can be of little assistance.
As a preliminary, it is clear that not all the purposes of the institution need be charitable. In People ex rel. New York Inst. for Blind v. Fitch (154 N. Y. 14) it was said, at pages 26-27: ‘‘ The relator is, doubtless, to an extent, an educational institution. But that fact alone does not justify the conclusions that it is not a charitable institution within the meaning and intent of the Constitution and statutes.” In that case the Constitution excluded educational institutions from the category of charities. The court held that although a substantial part of the activities of the organization were educational, that did not alter its character as a charitable institution.
Here respondent, in effect, does two things — it seeks by various means to lessen the rigor of our immigration laws and it gives aid and assistance to those who run afoul of those laws. It may be conceded that the former is not a charitable purpose. It is neither benevolent nor eleemosynary and only patriotic if one assumes the premises adopted by the respondent. It is no different from any other organization that seeks a change in any of our laws or governmental policies. The second activity is different. In this connection three factors must be explained even at the possible expense of prolixity. The service is rendered to those who seek it. Presumably, and this could not well be denied by the respondent, it is rendered not to defeat the administration of the laws but to afford the applicants adequate protection under them. It is rendered without charge. There was proof of one instance where the applicant could afford the service but was not asked to pay. But here again *315 the presumption is that the gratuitous nature of the services arises from the need of the applicants. Lastly, respondent seeks to give the impression that the services are rendered not because the respondent desires to help the individuals involved but because in so doing material and color for its legislative campaign is provided. This contention is hardly controlling. It is or is not a charitable organization depending on what it does, not why it does it.
It will be observed that the inquiry is not directed to the question of whether this respondent is in a true sense a charity but whether it purports to act as such. From the nature of the proceeding of which this application is a step, that question becomes whether in its solicitation of funds from the public it purported to so act. There can be no doubt that the public was solicited, at least in material part, to contribute to the defense of the people involved.
So that if rendering legal aid and related assistance to these people is a charitable purpose, this respondent is a charitable institution. In asserting the negative of this proposition, respondent relies heavily on the decision in People ex rel. Board of Charities v. New York Soc. for Prevention of Cruelty to Children (161 N. Y. 233). In that case it was held that the respondent Society for the Prevention of Cruelty to Children was not a charitable institution within the meaning of the Constitution and a statute giving the State Board of Charities the right to visit and inspect the institution. The court found the purpose of the society was to prevent cruelty to children and the method it was authorized to use to accomplish this end was to assist the police and prosecutors in cases of infractions of the laws dealing with children. It was a private bureau assisting the public authorities in enforcing certain laws. It was specifically found that any help rendered to particular children was merely incidental. The finding that the institution was not charitable was based on the vagueness of the language employed in the statute. From this it was concluded that the legislative intent was restricted to those institutions that received and expended public money (see p. 244), as abuse in administration of these institutions gave rise to the enactment of the statute.
With the statute with which we are here concerned, the situation is different. Here the abuse is the diversion of funds solicited from the public. And the three specified exceptions illustrate this. Religious corporations and educational institutions are regulated and supervision provided under different laws. And fraternal, social and alumni associations which do *316 not solicit from the general public are excluded. It is interesting to note that the court in the case last cited stated that the statute there in question could not possibly intend fraternal organizations even though engaged in charitable works. Here it is equally clear that such organizations are included if they engage in public solicitation.
It therefore appears that there is no holding evidencing a State policy to deny the particular activities of respondent the accolade of charity, provided they would otherwise qualify. Legal aid is now an established form of charity. It is now recognized that the complexities of our society often require legal assistance and making it available to those who otherwise could not command it is a service of equal rank with other forms of moral, social or even spiritual aid. It is of no consequence as to the character of the institution that the aid supplied is limited to a special branch of the law.
The conclusion is that respondent does purport to be a charitable institution within the meaning of article 10-A of the Social Welfare Law and the motion to vacate the order is denied.