Burke, J.
(concurring). The appellant seeks to reverse an order of the Appellate Division which denied his application for approval of ‘ ‘ the * * * existence * * * and incorporation ” of the Lambda Legal Defense & Education Fund, Inc. (hereafter Lambda) as a legal assistance corporation and dismissed the petition.
Section 495 of the Judiciary Law[1] prohibits the practice of law in New York by corporations or voluntary associations, subject to certain limited exceptions set forth in subdivision 5 of section 495 which provides, in relevant part: ‘ ‘ This section shall not apply * * * to organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy, whose existence, organization or incorporation may be approved by the appellate division of the supreme court of the department in which the principal office of such corporation or voluntary association may be located.” (Emphasis added.)
In furtherance of the authority thus vested in the Appellate Divisions by subdivision 5 to approve or disapprove the practice of law by “ benevolent or charitable ” organizations or by organizations rendering legal services to ‘ ‘ persons without means ”, the First Department promulgated part 608 of its *611 Rules (22 NYCRR part 608, hereafter Rule 608) which sets forth the procedural rules for application and practice pursuant to section 495 of the Judiciary Law. Actually, Rule 608 is a codification of the principles set forth in Matter of Community Action for Legal Servs. (26 A D 2d 354) (hereafter CALS), wherein, noting the Appellate Division’s concern for the protection of the public from the potential abuses of the corporate practice of law, minimal standards were called for which would insure that, in dealing with authorized corporate practitioners, “ the public will receive the best available legal services in the same way as those who retain their own private lawyers, with effective recourse to the court for ) toss professional failure ”. Among the safeguards suggested in CALS were the requirements that lay control over the operation of the legal assistance corporation be held to a minimum, and that the lawyer-employee of the corporation ‘ ‘ ‘ maintain full professional and direct responsibility to his clients for the information and services so received ’ ” thus insuring the independence and inviolability of the lawyer-client relationship (26 A D 2d, at pp. 361-362).
The petition gave to Lambda, which had previously been approved by the Commissioner of Education as a not-for-profit corporation, the following corporate purpose: “ The Corporation is organized to seek, through the legal process, to insure equal protection of the laws and the protection of civil rights of homosexuals. ’ ’ In the petition, which was modeled upon the previously approved application of the Puerto Rican Legal Defense and Education Fund, Inc., Lambda proposed, among other things “ (a) to initiate or join in judicial and administrative proceedings whenever legal rights and interests of significant numbers of homosexuals may be affected; (b) to provide to homosexuals information which will broaden their awareness of their legal rights and obligations; (c) to inform the legal community and the public of the goals, methods and accomplishments of the Corporation ”. Additionally, it was proposed that Lambda would provide legal services without charge ‘[1] in those situations which give rise to legal issues having a substantial effect on the legal rights of homosexuals ”. It is not disputed that Lambda’s petition complied in all respects with the requirements of Rule 608, pursuant to which other legal assistance organizations have been authorized to practice law.
*612 Despite the compliance of Lambda’s petition with Rule 608, and the recommendation of various bar associations that Lambda’s application be approved,[2] the Appellate Division denied and dismissed the application, declaring: ‘ ‘ The stated purposes are on their face neither benevolent nor charitable * * * nor, in any event, is there a demonstrated need for this corporation. It is not shown that the private sector of the profession is not available to serve this clientele, nor that, as to indigents, the existing legal assistance corporations are not available. A supplemental affidavit does indicate a lack of desire on the part of some attorneys who work pro bona publico to take the cases of homosexuals, but this appears to be no more than a matter of taste, and it is not established that lawyers are completely lacking. The averment does not show that the persons concerned will be without legal services unless , this corporation is approved for the purpose.” The court went on to conclude: “ it seems to us that we should not put our imprimatur upon any corporation which seeks approval to practice law for no more reason than that it claims to represent a minority..”
For reasons set forth hereinafter, we would reverse.
The threshold issue on this appeal concerns the validity of the Appellate Division’s determination that Lambda did not qualify for section 495 (subd. 5) approval since its stated purpose— to protect the legal rights of homosexuals, a minority —'Was “neither benevolent nor charitable”. Petitioner contends, with justification, that the disapproval of Lambda’s application on the ground that. its purpose was not charitable or benevolent was inconsistent with the Appellate Division’s prior approval of the Puerto Rican Legal Defense and Education *613 Fund, Inc. (PELDEF), and that the equal protection clause thus requires consideration of Lambda as a charitable organization. Section 495 (subd. 5) excepts from the proscription against the corporate practice of law organizations organized “ for benevolent or charitable purposes ” or “ for the purpose of assisting persons without means ”. In February of 1972, the Appellate Division approved the section 495 (subd. 5) application of the PELDEF, which set forth the following as its corporate purpose: “ To initiate or join in judicial and administrative proceedings affecting legal rights and interests of substantial numbers of Puerto Eicans and to conduct related informational and research programs ”. The PELDEF petition did not purport to limit its services to indigents; it must, therefore, be concluded that its application was approved as being that of an organization organized for ‘ ‘ benevolent or charitable ” purposes — that the Appellate Division considered the rendering of free legal services in furtherance'of the rights of a minority to be a charitable or benevolent purpose. As the petitioner points out, the characterization of such free legal services as charitable finds support in decisional law (see Matter of Green v. Javits, 7 Misc 2d 312, affd. 4 A D 2d 869; Dohrenwend v. Board of Educ., 227 N. Y. S. 2d 505).
The stated purpose of the Lambda petition was substantially identical to that of the Puerto Bican Defense Fund; indeed the petitioner admits having modeled the Lambda petition on the PELDEF application. There is thus no justification for a finding that one was motivated by charitable goals while the other was not. Accordingly, the Appellate Division erred in finding the purposes of Lambda neither “ benevolent nor charitable ”. ,
Upon concluding that Lambda was a charitable organization, ' a more troublesome issue arises — whether in the case of a properly submitted application, which fully complies with Eule 608 in a case such as this, there remains in the Appellate Division any discretion as to the approval or disapproval thereof. We think not.
The petitioner contends that Lambda’s proposed activities are protected by the First Amendment, and that under the United States Supreme Court’s decisions the Appellate Division may not restrict or prohibit such activities (citing N. A. A. C. P. v. ‘ Button, 371 U. S. 415; Railroad Trainmen v. Virginia Bar, 377 U. S. 1; Mine Workers v. Illinois Bar Assn., 389 U. S. 217; *614 United Transp. Union v. Michigan Bar, 401 U. S. 576). Were this merely a case of the State prohibiting a group such as Lambda from employing or selecting attorneys to represent them and then soliciting and referring cases for litigation in furtherance of the groups rights, Button and its progeny would be dispositive, for, as the Supreme Court recently stated: “ The common thread running through our decisions in NAACP v. Button, Trainmen, and United Mine Workers is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment ” (United Transp. Union v. Michigan Bar, 401 U. S. 576, 585). Accordingly, based upon First Amendment principles, Lambda, or any such group formed to further common-legal rights, is entitled to employ attorneys to represent them and to seek out cases which will advance their common goals. To . the extent that section 495 of the Judiciary Law would frustrate such activity by undue restriction or prohibition, it runs afoul of the First Amendment.[3]
There is involved here, however, more than the mere employment of attorneys or solicitation of cases in furtherance of group rights. The petitioner is seeking permission to practice law as a corporate entity. While the practice of law has always been subject to State regulation and is not, per se, protected by the First Amendment (see Schware v. Board of Bar Examiners, 353 U. S. 232; Konigsberg v. State Bar, 353 U. S. 252; cf. United Transp. Union v. Michigan Bar, 401 U. S., at p. 581), State regulation of the practice of law is, of course, subject to constitutional strictures; any qualification upon the practice of law *615 must have a rational connection with the applicant’s fitness or capacity to practice law, and must be applied in such a manner as to comport with the equal protection clause of the Fourteenth Amendment (Schware v. Board of Bar Examiners, 353 U. S., at p. 239). As Mr. Justice Black stated for the majority in Konigsberg: “We recognize the importance of leaving States free to select their own bars, but it is equally important that the State not exercise this power in an arbitrary or discriminatory manner nor in such way as to impinge on the freedom of political expression or association” (353 U. S., at p. 273).
In enacting section 495 (subd. 5) of the Judiciary Law, the Legislature has extended the right to practice law to certain groups and corporations, and has placed in the Appellate Division the authority and responsibility to oversee the enforcement thereof. In setting forth Buie 608, a regulatory scheme which, as suggested in CALS, is designed to protect the public from abuses by prohibiting lay control over the legal functions of corporately-employed attorneys and by fixing client responsibility in the individual attorney rather than in the corporate practitioner, the Appellate Division has effected controls over the corporate practice of law which, on their face, may be applied in a nondiscriminatory fashion. Once, however, an applicant has complied with Buie 608, in a case such as this, by filing a petition specifying all the requisite information, the Appellate Division may not, as it attempted to do here, exercise its discretion by selectively approving applications based upon a determination as to whether there is a need for the legal services sought to be offered by each applicant. It is of no consequence —'it bears no rational connection to the valid regulation of the practice of law — that there exist in “ the private sector ” • attorneys who are willing to handle the class of cases with which the applicant proposes to deal. Accordingly, it would violate equal protection of the law to distinguish between similarly situated minorities on such an irrational basis.
Furthermore, such a subjective determination as is proposed here lacks the necessary standards to insure a nondiscriminatory result. The danger of discrimination which inheres in such a standardless approval is, in our opinion, evidenced by the determination in question here. We can perceive no rational distinction in the need for group legal services as between Puerto Bicaris and homosexuals. Both groups are minorities subject *616 to varied discriminations and in need of legal services. Absent evidence to the contrary, it must be assumed that the services of private attorneys are equally available or unavailable to both groups.
In sum, the Appellate Division erred in denying and dismissing the instant petition. There was no rational basis for its finding that Lambda was not organized for ‘ ‘ charitable and benevolent purposes ” within the meaning of section 495 of the Judiciary Law. And, since Lambda’s petition complied with Buie 608, there was no discretion in the Appellate Division to disapprove the application.
Begarding the petitioner’s contention that the section 495 delegation of authority to the Appellate Division to approve the applications lacks adequate standards to govern such determinations,[4] suffice it to say that if, as suggested above, the statute is construed to leave no discretion in the Appellate Division — if approval is granted in a nondiscriminatory manner- — -then the lack of standards will not render the statute constitutionally infirm (Shuttlesworth v. Birmingham, 394 U. S. 147, 155; Cox v. New Hampshire, 312 U. S. 569, 577).
The order appealed from should be reversed, the petition reinstated and the matter remitted to the Appellate Division.

. The provisions of section 495 of the Judiciary Law, formerly found in section 280 of the Penal Law, were transferred from the Penal Law to the Judiciary Law by section 131 of chapter 1031 of the Laws of 1965. effective September 1, 1967.

. Section 608.2 requires submission of each petition to the Association of the Bar of the City of New York, the New York County Lawyers Association and the Bronx County Bar Association for consideration. In regards the Lambda petition, both the New York County Lawyers Association and the Association of the Bar recommended approval of the application. In a Memorandum submitted by the Committee on Professional Responsibility of the Association of the Bar, it was noted: “We have carefully reviewed New York cases interpreting the terms ‘ benevolent or charitable ’ and have concluded that the purposes of the LAMBDA Legal Defense & Education Fund are within the meaning of Judiciary Law § 495. It seems established that all the purposes of an accepted charitable institution need not be charitable, nor need its services be limited to the poor. See '[Matter of] Green v. Javits, 7 Misc 2d 312 (Sup. Ct. Spec. Term N. Y. Co. 1957), affd. [4 A D 2d 869].”

. Section 495 of the Judiciary Law provides: “ 1. No corporation or voluntary association shall " * ° ” (d) furnish attorneys or counsel * • • (h) advertise that either alone or together with or by or through any person whether or not a duly and regularly admitted attorney-at-law, it has, owns, conducts or maintains a law office or ah office for the practice of law, or for furnishing legal advice, services or counsel. 2. No corporation or voluntary association shall itself or by or through its officers, agents or employees, solicit any claim or demand, or take an assignment thereof, for the purpose of representing any person in the pursuit of any civil remedy ”.
Thus, unless Lambda, or any similar group or association formed to further group legal rights, is approved by the Appellate Division pursuant to section 495 (subd. 5), its members would be precluded from exercising their First Amendment rights under Button and its progeny. Accordingly, either section 495 is unconstitutional, in part, or the approval of the Appellate Division for such constitutionally protected activities must be granted as a matter of course.

. At least one commentator has also suggested that the section 495 delegation of authority to “approve” may be unconstitutional for lack of adequate standards. (See Botein, The Constitutionality of Restrictions on Poverty Law Firms: A New York Case Study, 46 NYU L. Rev. 748, 751-752.) However, as Professor Botein points out, -the Supreme Court has recently upheld a similarly vague delegation to the Appellate Division vis-a-vis the admission of individuals to practice law (see Law Students Research Council v. Wadmond, 401 U. S. 154).